982 F.2d 181
 UNITED STATES of America, Plaintiff-Appellee,
Kathryn A. Belfance, Trustee, Party In Interest-Appellee,
v.
Homer A. HESS, et al., Defendants,
Black River Petroleum, Inc., Party In Interest-Appellant.
 No. 92-3320.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 16, 1992.
Decided Dec. 11, 1992.
 
 James V. Moroney, Asst. U.S. Atty., Cleveland, OH (argued and briefed), for U.S.
 Howard E. Mentzer (briefed), Rajko Radonjich (argued), Akron, OH, for Kathryn A. Belfance, Trustee.
 Jeffrey W. Krueger, Wegman, Hessler, Vanderburg & O'Toole, Cleveland, OH (argued and briefed), for Homer A. Hess and Black River Petroleum, Inc.
 Before: KENNEDY and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 MILBURN, Circuit Judge.
 
 
 1
 Appellant Black River Petroleum, Inc. ("Black River") appeals the orders of the district court denying its motion for the return of business documents allegedly seized during a search of its premises. The orders also directed the government to turn over the documents to Kathryn Belfance, trustee in bankruptcy for Homer Hess. On appeal, the issues are (1) whether the district court's order directing that documents be turned over to the bankruptcy trustee is a final and appealable order, (2) whether the district court erred in determining that the documents should be transferred to the bankruptcy trustee instead of Black River, (3) whether the district court denied Black River due process of law by ruling on the trustee's turnover motion before Black River's allotted time to respond had elapsed, and (4) whether the search that produced the documents in question was a general search in violation of the Fourth Amendment. For the reasons that follow, we vacate and remand.
 
 I.
 
 2
 This matter arose as a proceeding ancillary to a criminal case, United States v. Homer A. Hess, et al., No. 5:91CR0032, in the United States District Court for the Northern District of Ohio. (On appeal, the docket number is No. 92-4115.) The criminal case involved allegations of bank and bankruptcy fraud against Homer Hess, Donald Georgeoff, Diane Georgeoff, and many others. In August 1991, Homer Hess and Donald Georgeoff pled guilty to various charges, and the charges against Diane Georgeoff were dismissed. Donald Georgeoff and Homer Hess were sentenced in November 1991, and both appealed their convictions. This court has already affirmed Georgeoff's conviction. Hess's case is fully briefed, and oral argument was heard by a panel of this court on October 16, 1992.
 
 
 3
 Prior to the indictment in this case, government agents seized most of the business records of Black River pursuant to the execution of a search warrant. Shortly after Hess and Georgeoff were sentenced, Black River, which was not a defendant in the criminal case, filed a motion for the return of all property seized from it during the search. On December 23, 1991, the district court held a hearing attended by Black River's attorney, the United States Attorney, and Kathryn Belfance, bankruptcy trustee for Homer Hess and two of his business entities. The trustee "indicated opposition to any surrender of any original documents based upon the asserted premise that the bankrupt Homer Hess owns in its entirety the stock in Black River Petroleum...." J.A. 225. The court, however, did not resolve the issue discussed at the hearing, but instead invited counsel for the trustee "to enter an appearance and file whatever document [she] deemed appropriate with respect to the issue before the Court." The court also "indicated to counsel for Black River that it would take no further action absent a further pleading filed on behalf of Black River." Id.
 
 
 4
 On February 26, 1992, the trustee filed a response in opposition to Black River's motion for return of its property in which it asked the district court to deny Black River's motion. In a memorandum attached to its response and incorporated in it by reference, however, the trustee set out at considerable length her contentions that Black River was an alter ego of Homer Hess and that she, as Hess's trustee, was entitled to the property of Hess's alter ego, Black River. Accordingly, she urged the district court to "authorize the Federal Bureau of Investigation to return the books, records, and documents formerly under the custody and control of others claiming ownership of Black River Petroleum, Inc. to Trustee, Kathryn A. Belfance...." J.A. 231-32.[1]
 
 
 5
 On March 11, 1992, before Black River had filed a response to the trustee's motion, the district court entered an order finding the trustee's "motion to be well taken," J.A. 59 (emphasis added), and ordering the Federal Bureau of Investigation to turn over the documents to the trustee. The court also specifically denied Black River's motion for the return of property.
 
 
 6
 On March 13, 1992, Black River filed a motion for reconsideration of the order of March 11, 1992, alleging that it had not been afforded the right to be heard on the trustee's motion for a turnover of documents to the trustee. Specifically, it alleged that the district court, having represented in its order of December 24, 1991, that it would take no further action until Black River filed a further pleading, ruled on the trustee's motion prematurely and before Black River's ten-day response time had run under the local rules. Black River's motion to reconsider also attacked the court's order on its merits, contending that the trustee had not proven entitlement to the documents in question by a preponderance of the evidence.
 
 
 7
 The district court did not address the arguments made in Black River's motion to reconsider. In an order issued on March 19, 1992, it found that
 
 
 8
 the papers of Black River Petroleum should be in a depository controlled by an officer of the Court. To the extent Black River Petroleum needs access to its documents and papers for which it has requested a turnover order in this court, it may apply to the judicial officer presiding over disputes arising from the Homer Hess bankruptcy as they relate to Black River Petroleum. Such a judicial officer is in a far better position than this Court to adjudicate such disputes.
 
 
 9
 J.A. 62. This timely appeal followed.
 
 II.
 A.
 
 10
 At the outset, the government suggests that this court lacks jurisdiction over this appeal because the district court's orders of March 11 and March 19, 1992, were not final orders. See 28 U.S.C. § 1291. The government relies on DiBella v. United States, 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962), a case in which the Supreme Court considered whether an order denying a preindictment motion to suppress was interlocutory or not for purposes of the finality doctrine. Holding that the order was not final, the court stated:
 
 
 11
 Orders granting or denying suppression in the wake of such proceedings are truly interlocutory, for the criminal trial is then fairly in train. When at the time of ruling there is outstanding a complaint, or a detention or release on bail following arrest, or an arraignment, information, or indictment--in each such case the order on a suppression motion must be treated as "but a step in the criminal case preliminary to the trial thereof." Cogen v. United States, 278 U.S. 221, 227, 49 S.Ct. , 120 [73 L.Ed. 275 (1929) ]. Only if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant can the proceedings be regarded as independent.
 
 
 12
 Id., 369 U.S. at 131-32, 82 S.Ct. at 660.
 
 
 13
 The present case is distinguishable from DiBella. There was no motion to suppress filed in this case, as there was in DiBella. None of the defendants in this case sought return of the documents. Instead, two strangers to the criminal case, the bankruptcy trustee and Black River, contested custody of the documents. Although Black River did ask the district court to hold the search of its premises to be illegal, it did so in an attempt to cover all the possibilities for a return of its property under Federal Rule of Criminal Procedure 41(e), which provides for the return of property where any person is "aggrieved by an unlawful search and seizure or by the deprivation of property ..." (emphasis added). Black River moved for a return of its property on both grounds under Rule 41. The fact that it alleged an unlawful search does not convert its motion for the return of property into a motion to suppress evidence. The criminal trial in this case was concluded at the time Black River filed its motion, and thus it would be absurd to construe the motion for return as a motion to suppress, as to which Black River would have had no standing in any event. Therefore, Black River's motion for the return of property was "solely for return of property" under DiBella. 369 U.S. at 131-32, 82 S.Ct. at 660.
 
 
 14
 Moreover, Black River's motion was "in no way tied to a criminal prosecution in esse against the movant ...," id., because there has never been a criminal prosecution against the movant, Black River. Nor can Homer Hess's appeal pending in this court be considered a criminal prosecution in esse against Black River. The rationale for treating orders on motions to suppress as interlocutory is that there will be an opportunity to appeal them when the criminal case is concluded in the district court. That rationale does not fit this case where the movant was not a party to the criminal case, has no standing in the appeal of that case, and can obtain review of the district court's ancillary order only by an appeal such as this.
 
 
 15
 DiBella is merely an application by the Supreme Court of the final order doctrine to a situation very unlike this case. A final order is usually defined as "one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Catlin v. United States, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945); accord Knafel v. Pepsi-Cola Bottlers of Akron, Inc., 850 F.2d 1155, 1159 (6th Cir.1988). In this case, the district court has entered an order granting the trustee full relief and denying any relief to Black River. There is no further action to be taken in the district court respecting either Black River or the trustee. There is no mechanism for obtaining review of the district court's orders other than this appeal. Therefore, we conclude that the district court's orders are final and this court has jurisdiction over this appeal.
 
 B.
 
 16
 Black River argues that the district court prematurely issued its order of March 11, 1992, in that it had represented in its preceding order of December 24, 1991, that it would take no further action until Black River filed a further pleading. In addition, Black River contends that the district court's order of March 11, 1992, was entered before Black River's time to respond to the trustee's motion had expired under the district court's local rules.
 
 
 17
 The characterization of the trustee's filing of February 26, 1992, is important because under the district court's local rules, Black River's response time depends upon the characterization. If the trustee's filing is construed as nothing more than a response to Black River's earlier motion for the return of property, then under the Northern District of Ohio's Local Rule 8:8.1(e) Black River had only five days within which to reply, and the district court's order was entered after that time had elapsed.[2] Because the trustee's filing was served on Black River on March 2, 1992, and because the district court entered its order on March 11, 1992, Black River's five-day time period had run if Black River was filing a "reply memorandum."
 
 
 18
 However, Local Rule 8:8.1(d) provides that a party shall have ten calendar days[3] within which to file a memorandum in opposition to a motion.[4] If the trustee's filing is construed as something more than a reply memorandum, i.e., as a motion in its own right, then Black River had ten days from the date of service, March 2, 1992, within which to file its "Memorandum in Opposition."
 
 
 19
 Federal Rule of Civil Procedure 7(b) provides that "[a]n application to the court for an order shall be by motion...." The trustee's filing did more than merely oppose the return of the documents in question to Black River. It proposed a new custodian for the documents and offered arguments to explain why the trustee, rather than Black River or the Federal Bureau of Investigation, was now the appropriate custodian of the records. This formal intervention by a third party and this request for an order directing a new custodian of the records should be treated as a motion by the trustee, not merely a response to Black River's earlier motion. Under these circumstances, Black River had through March 12, 1992, to present its counterarguments in a memorandum in opposition, and the district court should have withheld its ruling until that time had expired. Because it did not, the district court's order of March 11, 1992, shall be vacated.[5]
 
 
 20
 Black River filed a motion to reconsider on March 13, 1992, in which it fully set out its case against the transfer of its records to the trustee. Had the district court dealt with this motion to reconsider on its merits, it might be argued that Black River has not suffered any harm from the district court's premature order of March 11, 1992. It is clear, however, that the court did not address the legal or factual issues raised in the motion to reconsider. Instead, it merely recited that there had been evidence of "massive bankruptcy fraud on the part of Homer Hess ...," J.A. 61, and concluded that the records should "be in a depository controlled by an officer of the Court." J.A. 62. However, the records were already in a depository controlled by an officer of the court. The district court noted that Black River could apply to the bankruptcy court for such access to the records as it might need, and on those grounds denied reconsideration of its earlier order. Thus, the records were transferred to the custody of the bankruptcy trustee without any consideration of the merits of Black River's arguments, without any hearing on the trustee's motion, and without any resolution of the legal questions raised by the parties concerning their rights in the documents.
 
 
 21
 Black River also argues that it was denied due process of law under the Fifth Amendment in that no hearing, as contemplated by Rule 41(e), was ever held at which Black River could have contested the allegations raised in the trustee's motion. Rule 41(e) provides:
 
 
 22
 Motion for Return of Property. A person aggrieved by an unlawful search and seizure or by the deprivation of property may move the district court for the district in which the property was seized for the return of the property on the ground that such person is entitled to lawful possession of the property. The court shall receive evidence on any issue of fact necessary to the decision of the motion.
 
 
 23
 (Emphasis added).
 
 
 24
 Rule 41(e) clearly contemplates a hearing "on any issue of fact necessary to the decision of the motion." No hearing was held, and no evidence was taken, regarding the trustee's claim to possession of the records in question. There are no findings of fact or conclusions of law regarding either the trustee's right to the records or the reasonableness of the government's retention of the records. See United States v. Duncan, 918 F.2d 647, 654 (6th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2055, 114 L.Ed.2d 461 (1991); Fed.R.Crim.P. 41(e) advisory committee's note to 1989 amendment ("[R]easonableness under all of the circumstances must be the test when a person seeks to obtain the return of property.").
 
 
 25
 In this case, the district court held a hearing on December 24, 1991, at which the government, the trustee, and Black River apparently stated their positions. No evidence seems to have been introduced, and the court adjourned the hearing without a resolution of the issues after encouraging the parties to agree on a resolution and allowing the trustee permission to file pleadings setting forth her position. After the trustee filed her motion for a turnover of the records on February 26, 1992, the court held no further hearing and merely ordered the records turned over to the trustee for reasons having to do only with perceived administrative convenience, not legal entitlement to the documents. Black River had filed a motion claiming the right to possess the records. At that point, it was possible that the government had a better claim to retain the records under the reasonableness test, and it was possible that the trustee had a superior legal claim to the documents because she stood in the shoes of Homer Hess, who may have been Black River's alter ego. No evidence was taken on any of these issues, however, and the district court did not purport to resolve them. It merely transferred the documents, did not consider the issues, and advised the parties to continue their litigation in another court.
 
 
 26
 In United States v. LaFatch, 565 F.2d 81, 83 (6th Cir.1977), cert. denied, 435 U.S. 971, 98 S.Ct. 1611, 56 L.Ed.2d 62 (1978), this court stated, "[t]he general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated." Accord Sovereign News Co. v. United States, 690 F.2d 569, 571 (6th Cir.1982), cert. denied, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983). In United States v. Martinson, 809 F.2d 1364, 1370 (9th Cir.1987), the Ninth Circuit held that "[a] district court has both the jurisdiction and the duty to return the contested property 'once the government's need for it has ended.' " (citing United States v. Wilson, 540 F.2d 1100, 1103-04 (D.C.Cir.1976)). "Moreover, the existence of adequate civil remedies neither discharges the court's duties nor disturbs its jurisdiction." United States v. Wingfield, 822 F.2d 1466, 1470 (10th Cir.1987); see also Martinson, 809 F.2d at 1368; Wilson, 540 F.2d at 1104. Accordingly, we hold that the district court did not discharge its duty under Rule 41(e) to hear and decide the issues.
 
 C.
 
 27
 Black River also argues that it is entitled to possession of the documents because they were seized as the result of a general exploratory search in violation of the Fourth Amendment. This court need not necessarily reach that issue because
 
 
 28
 [u]nder the 1989 amendment, Rule 41(e) is no longer limited to property held following an unlawful search or seizure. Now, any person aggrieved by "the deprivation of property" may file a Rule 41(e) motion to require the government to return the property.
 
 
 29
 Government of Virgin Islands v. Edwards, 903 F.2d 267, 273 (3d Cir.1990) (quoting Fed.R.Crim.P. 41(e)).
 
 
 30
 The legality of the seizure of the documents could become an issue in litigation between the government and Black River if the government seeks to retain the documents. However, the district court took no evidence on the validity of the search[6] and made no findings in that regard. If the trustee loses her motion for a turnover in the district court and the government decides to retain the documents itself, then it might be necessary to develop a record on the legality of the search. Until then, there is simply nothing for this court to review as to this issue.
 
 III.
 
 31
 For the reasons stated, the orders of the district court authorizing the Federal Bureau of Investigation to turn over the records and documents of Black River Petroleum, Inc. to the trustee in bankruptcy are VACATED, and this case is REMANDED to the district court. The district court is instructed to allow Black River to respond fully to the trustee's motion for a turnover of the records and documents and to conduct a hearing pursuant to Rule 41(e) to determine which of the parties shall have possession of the records and documents. Insofar as the contest is one between the government and Black River, the district court is to treat the case as a civil equitable proceeding and balance the competing equities. Duncan, 918 F.2d at 654. Insofar as the contest is between Black River and the bankruptcy trustee, the district court is to treat the matter as a civil case involving a legal dispute over property. United States v. Maez, 915 F.2d 1466, 1468 (10th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 1005, 112 L.Ed.2d 1087 (1991); United States v. Estep, 760 F.2d 1060, 1064 (10th Cir.1985).
 
 
 
 [1]
 The trustee also filed a complaint against Black River in the United States Bankruptcy Court alleging that Black River was the alter ego of Homer Hess. The matter was removed to the United States District Court, which ordered the bankruptcy court to try the case without a jury to determine whether the alter ego claim should be classified as a core or non-core proceeding. The district court's order has apparently been appealed to this court, and the alter ego issue has not been resolved in the bankruptcy process. Brief of Kathryn Belfance, trustee, at 5
 
 
 [2]
 Rule 8:8.1(e) provides: "Reply Memorandum. The moving party may serve and file a reply memorandum in support of its motion within five (5) calendar days after service of the memorandum in opposition." (Emphasis added)
 
 
 [3]
 To the extent that these local rules use the phrase "calendar days" to mean an unbroken period of consecutive days, the local rules are contrary to the Federal Rules of Civil Procedure, Rule 6(a) of which provides that "[w]hen the period of time prescribed or allowed is less than 11 days, intermediate Saturdays, Sundays, and legal holidays shall be excluded in the computation." Rule 83 requires that local rules be "not inconsistent" with the Federal Rules of Civil Procedure
 
 
 [4]
 Local Rule 8:8.1(d) provides: "Memorandum in Opposition. Each party opposing a motion shall serve and file a memorandum in opposition within ten (10) calendar days after service of the motion."
 
 
 [5]
 Local Rule 8:8.1(g) provides: "Hearings. The Judicial Officer may rule on unopposed motions without hearing at any time after the time for filing an opposition has expired. The Judicial Officer may also rule on any opposed motion without hearing at any time after the time for filing a Reply Memorandum has elapsed."
 
 
 [6]
 No defendant filed a motion to suppress