**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0319n.06
Filed: June 5, 2008

No. 06-6199

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| RAYMOND SAVOY, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before: KEITH, DAUGHTREY, and GIBBONS, Circuit Judges.

**DAMON J. KEITH, Circuit Judge.** Defendant-Appellant Raymond Savoy appeals the district court's denial of his motion for acquittal and his motion to suppress evidence. Savoy claims that the statute under which he was convicted, 18 U.S.C. § 2252(a)(4)(B), is unconstitutional, both facially and as applied to him. In addition, he argues that videotapes taken from his house and subsequently used in his prosecution were obtained illegally. For the following reasons, we hold that 18 U.S.C. § 2252(a)(4)(B) is constitutional on its face and as applied to Defendant, and that the seizure of Defendant's videotapes was proper. We therefore **AFFIRM** the district court's orders.

## I. FACTUAL BACKGROUND

On March 1, 2005, a search warrant was issued to Mr. James Crowe, a Special Agent with the Tennessee Alcoholic Beverage Commission, by the Circuit Court of Haywood County, Tennessee. The warrant authorized Mr. Crowe to search the Rocky Top Tavern and its employees

for "intoxicating liquors and all records, papers, ledgers, pictures, or devices used in the storage, sale, transportation, distribution or manufacture of [said liquors] . . . contrary to the Laws of the Sate of Tennessee." The warrant was granted based on an affidavit of James Crowe in which he stated he observed intoxicating liquors being served in the Rocky Top Tavern without a permit.

On March 5, 2005, Mr. Crowe, along with other agents of the Tennessee Alcoholic Beverage Commission and the West Tennessee Judicial Task Force, executed the search warrant at the Rocky Top Tavern. During the search, officers discovered a locked room, which Defendant Savoy opened for them. Mr. Savoy described this room as his office. The room contained a single bed, a desk, a television (TV), a video cassette recorder (VCR), and several videotapes. Defendant advised officers that the TV and VCR were used in relation to his video-surveillance system. According to the officers, Mr. Savoy consented to the officers viewing the videotapes on his TV and VCR.[1] Agents played the tapes to determine whether they contained illegal liquor or beer sales. However, the tapes actually depicted sex acts between Mr. Savoy and unknown females, what appeared to be minor females removing their clothing and dancing, and sexual acts between a male and what appeared to be a minor female. Officers then found a camera and microphone hidden in a hollowed-out two-by-four (2 x 4) stud behind the bar. The camera and microphone were not readily visible to persons inside the bar, and were recovered only after Defendant Savoy advised agents of their respective location. The officers seized all of the videotapes for further review.

After reviewing the tapes, Defendant was indicted on various counts associated with child

---

[1]Defendant contends that he did not give his consent to the officers to view the tapes. The district court credited the testimony of the officers and found that he did consent to the officers viewing of the tapes.

pornography. In Count 1, Defendant was charged along with a co-defendant, Ronnie Mullen, with using a 14-year-old female to engage in sexually explicit conduct to produce two videotapes using materials that had been shipped in interstate or foreign commerce in violation of 18 U.S.C. § 2251(a) and (2). In Count 2, Defendant was charged with using a 14-year-old female to engage in sexually explicit conduct to produce one videotape using materials that had been shipped in interstate or foreign commerce in violation of 18 U.S.C. § 2251(a). In Count 3, Defendant was charged with using a female less than 18- years-old to engage in sexually explicit conduct to produce a videotape using materials that had been shipped in interstate and foreign commerce in violation of 18 U.S.C. § 2251(a). And in Count 4, Defendant was charged with possessing four videotapes, which were produced with materials shipped in interstate and foreign commerce, that depicted females who were less than 18-years-old engaging in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(4)(B).

On October 11, 2005, Defendant's jury trial began. Four of the tapes seized by Mr. Crowe were admitted into evidence at trial. The first tape depicted a 14-year-old female and co-defendant Ronnie Mullen engaging in sexual acts behind the bar. On the second tape, Defendant Mullen again engaged in sexual acts with the 14-year-old girl. This time, however, Defendant Savoy himself also participated in performing sexual acts on the girl. On the third tape, three females danced behind the bar. Two of the females removed all of their clothing, while one of the females removed only her shirt and bra. One of the females who completely disrobed was 14 years old, while the female who only partially disrobed was 15 years old. In the tape, Defendant Savoy engages in sexual conduct with both of the girls. The final tape showed two females serving drinks from behind the

bar in their panties. The females were determined to be 16-years-old at the time. On the tape,

Defendant is seen ordering one of the girls to remove an article of clothing, exposing her buttocks,

and to spread her legs, exposing her genitalia. Defendant also sexually touched both of the girls on

the video.

On October 13, 2005, the jury returned a guilty verdict on all four counts of the indictment.

Defendant subsequently filed a motion for judgment of acquittal and an amended motion for

judgment of acquittal. On March 31, 2006, Defendant's motion was denied and he was sentenced

to 180 months on Counts 1, 2, and 3 and 120 months as to Count 4, to be served concurrently.

Defendant now appeals the denial of his motion to suppress and his conviction on Count 4,

possession of child pornography in violation of 18 U.S.C. § 2252(a)(4)(B).

## II. DISCUSSION

### *A. Constitutionality of the Statute*

Defendant's first argument on appeal is that Congress has exceeded its power under the

Commerce Clause in passing 18 U.S.C. § 2252(a)(4)(B) insofar as the act prohibits simple intrastate

possession of sexually explicit materials. Defendant argues that mere possession of child

pornography, without more, cannot be considered economic activity. As such, it cannot be said to

have the type of substantial impact on interstate commerce needed to qualify the activity for

regulation under the Commerce Clause. In making this argument, Defendant primarily relies on

*United States v. Lopez*, 514 U.S. 549 (1995). In *Lopez*, the Supreme Court struck down the

Gun-Free School Zones Act, 18 U.S.C. § 922(a)(1)(A), which prohibited knowingly possessing a

firearm within a school zone. The Supreme Court found the statute unconstitutional in part because it determined that possessing a gun was "purely intrastate activity" and thus did not have the requisite substantial effect on commerce to justify its passage under the Commerce Clause. *Id* at 562-67. Following *Lopez*, Defendant Savoy argues that possessing child pornography is an intrastate activity that does not substantially affect interstate commerce. Therefore, he contends, Congress cannot regulate the activity.

A constitutional challenge to a statute is a question of law, which this Court reviews *de novo*. *United States v. Smith*, 182 F.3d 452, 455 (6th Cir. 1999); *United States v. Knipp*, 963 F.2d 839, 842-43 (6th Cir. 1992). "Due respect for the decisions of a coordinate branch of Government demands that we invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison*, 529 U.S. 598, 607 (2000); *see also United States v. Rodia*, 194 F.3d 465, 469 (3d Cir. 1999) (recognizing that "we must respect Congress's ample discretion to determine the appropriate exercise of its Commerce Clause authority").

This Court addressed an argument nearly identical to Defendant's in *United States v. Chambers*, 441 F.3d 438 (6th Cir. 2006). In *Chambers*, the defendant was convicted of possessing child pornography after authorities found pictures of nude under-aged males in his apartment. *Id*. at 443. The pictures had been taken by the defendant with his Polaroid camera. *Id*. at 445. The defendant appealed his conviction arguing that § 2252(a)(4)(B) was unconstitutional as applied to him because there was an insufficient nexus to interstate commerce where the criminal act was the mere possession of pornography produced on film transported interstate. We concluded that the fact

that the statute encompasses purely intrastate activity is of "'no moment.'"  *Chambers*, 441 F.3d at

455 (quoting *Gonzales v. Raich*, 545 U.S. 1, 22 (2005)).  We determined that the Supreme Court's

ruling in *Gonzales v. Raich*, 545 U.S. 1 (2005), governed.  In *Raich*, the Court held that as long as

Congress has a rational basis for concluding that the intrastate activity could substantially affect

interstate commerce, Congress can regulate that activity under the Commerce Clause.  *Raich*, 545

U.S. at 22.  Thus, since "'Congress has a rational basis for believing that homegrown child

pornography can feed the national market and stimulate demand,'" we found § 2252(a)(4)(B)

constitutional.  *Chambers,* 441 F.3d at 455.

Although the defendant in *Chambers* challenged the statute as it applied to him, rather than

challenging it on its face, the rationale of our decision considered the constitutionality of the statute

both facially and as applied.  As *Chambers* is controlling in the instant matter, and Defendant has

proffered no reason why we should depart from our ruling in *Chambers*, we again find §

2252(a)(4)(B) constitutional.


### B. Constitutionality of the Statute as Applied to Defendant

Defendant's second argument is that even if § 2252(a)(4)(B) is constitutional on its face, it

is unconstitutional as applied to him.  In support of this claim, Defendant cites to this Court's

decision in *United States v. Corp*, 236 F.3d 325 (6th Cir. 2001).  In *Corp*, the 23-year-old defendant

was arrested for possessing pictures of a 17-year-old girl and his 26-year-old wife engaging in sexual

activity in violation of § 2252(a)(4)(B).  *Id*. at 26.  The pictures were not distributed or shown to

others, and the 17-year-old voluntarily posed for the photographs and did not want the defendant

prosecuted. *Id*. In that case, this Court found that although § 2252(a)(4)(B) is constitutional, it could not be applied to the defendant because his activity was not substantially connected to interstate commerce. *Id*. at 332. In determining whether activity involved in a certain case has a substantial effect on commerce, the panel in *Corp* suggests that courts ask themselves the following questions: (1) Was the activity in the case related to explicit and graphic pictures of children engaged in sexual activity, particularly children about fourteen years of age or under, for commercial or exploitive purposes?; (2) Were there multiple children so pictured?; (3) Were the children otherwise sexually abused?; (4) Was there a record that Defendant repeatedly engaged in such conduct or other sexually abusive conduct with children?; and (5) Did the defendant move from place to place, or state to state, and repeatedly engage in production of such pictures of children? *Id*. at 333.

Our ruling in *Corp* does not support Defendant Savoy's argument that § 2252(a)(4)(B) is unconstitutional as applied to him because the facts in the instant matter satisfy the majority of the prongs laid out in *Corp*, thereby establishing a sufficient effect on interstate commerce. First, the videotapes depict Defendant and his co-defendant engaging in sexual acts with children, including one child who was 14 years old. In addition, the tapes were made for exploitive purposes, as they were made for Defendant's own gratification. Second, there were multiple children involved, as there were a total of four minor females in the videos. Third, the children were sexually abused. The 14-year-old was taped having sex with an adult, co-defendant Ronnie Mullen. At a minimum this

act could constitute statutory rape, and consequently sexual abuse.[2]   The remaining girls were fondled by the 60-something-year-old Defendant. Fourth, Defendant repeatedly engaged in sexually abusive conduct with the children. The videotapes on record were made on different occasions with different victims over a period of several months. Notably, the last prong is the only one not met as there is no evidence that Defendant traveled to produce more videotapes. However, since nearly every question proffered in *Corp* can be answered in the affirmative in the instant matter, a sufficient nexus exists between Defendant's actions and interstate commerce.

### C. Seizure of the Tapes

Defendant's final argument is that the officers who searched Defendant's business improperly seized the videotapes that were used in his prosecution. Specifically, Defendant claims that the affidavit in support of the warrant did not support a probable cause determination, the warrant itself was ambiguous and overbroad, and the items seized were not included in the list of items which were identified in the affidavit in support of the search warrant.

With respect to Defendant's first contention, that the affidavits in support of the warrant failed to merit a probable cause determination, we find that the magistrate judge was not in error. The United States Constitution commands that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. Probable cause is "a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). "The standard of review for the sufficiency of an affidavit 'is whether the

---

[2]The 14-year-old testified that Ronnie Mullen was her boyfriend when they engaged in the sexual activity depicted on the tape. Nevertheless, he was an adult and she was a minor at the time.

magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited.'" *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001) (quoting *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991)). "'This court pays great deference to the determinations of probable cause made by a state magistrate, whose findings 'should not be set aside unless arbitrarily exercised.'" *United States v. Weaver*, 99 F.3d 1372, 1376 (6th Cir. 1996) (quoting *United States v. Pelham*, 801 F.2d 875, 877 (6th Cir. 1986)).

Here, a search warrant was issued to Mr. James Crowe, a Special Agent with the Tennessee Alcoholic Beverage Commission, by the Circuit Court of Haywood County, Tennessee. The warrant gave Mr. Crowe permission to search the Rocky Top Tavern and its employees for "intoxicating liquors and all records, papers, ledgers, pictures, or devices used in the storage, sale, transportation, distribution or manufacture of [said liquors] . . . contrary to the Laws of the Sate of Tennessee." The warrant was granted based on an affidavit of Mr. Crowe in which he stated that he bought an alcoholic drink at the Rocky Top Tavern despite the fact that neither the Rocky Top Tavern, nor Defendant Savoy, had been issued a permit to sell alcoholic beverages. As Mr. Crowe's affidavit stated that he observed a crime being committed at a particular place, his affidavit established a "fair probability that contraband or evidence of a crime [would] be found at a particular place." *Gates*, 462 U.S. at 238. Therefore, the magistrate judge was correct to find that Mr.Crowe's affidavit established the probable cause necessary to justify the issuance of a search warrant of the Rocky Top Tavern.

Defendant also claims that the term "intoxicating liquors," as used in the search warrant, was ambiguous and overbroad because the Rocky Top Tavern was allowed to sell beer and beer is an

"intoxicating liquor."[3] The Fourth Amendment requires warrants to "particularly describe the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "A general order to explore and rummage through a person's belongings is not permitted. The warrant must enable the searcher to reasonably ascertain and identify the things which are authorized to be seized." *United States v. Cook*, 657 F.2d 730, 733 (5th Cir. Unit A Sept. 1981). The particularity requirement eliminates the "danger of unlimited discretion in the executing officer's determination of what is subject to seizure." *United States v. Savoca*, 761 F.2d 292, 298-99 (6th Cir. 1985).

Here, Agent Crowe was granted a search warrant to obtain "[i]ntoxicating liquors which are possessed contrary to the Laws of the State of Tennessee." The term "intoxicating liquors" has a very specific definition under Tennessee law. It is defined as "alcohol, spirits, liquors, wines and every liquid or solid, patented or not, containing alcohol, spirits, liquor or wine, and capable of being consumed by human beings," but it does not include "any beverage with alcohol content of five percent (5%) or less." T. C. A. § 57-2-101. As the term "intoxicating liquors" has a specific and limiting definition, it cannot be considered ambiguous or overbroad. The use of the term "intoxicating liquors," therefore, was in conformance with the particularity requirement of the Fourth Amendment.

Lastly, Defendant argues that the videotapes seized in search of his premises were not

---

[3]It should be noted that Defendant did not offer any evidence at trial to prove that he was allowed to sell beer at the Rocky Top Tavern. Moreover, Agent Crowe's affidavit states, "[a] check of Tennessee Alcoholic Beverage Commission records shows that neither Rocky Top Tavern, nor Ray Savoy have been issued a permit to sell alcoholic beverages on premise." Nevertheless, his argument that the warrant was overbroad because of the use of the term "intoxicating liquor" is futile, as it has a specific definition.

identified in the search warrant and therefore should not have been taken. As mentioned previously, it is well settled that items to be seized pursuant to a search warrant must be described with particularity to prevent "the seizure of one thing under a warrant describing another" in violation of the Fourth Amendment. *United States v. Wright*, 343 F.3d 849, 863 (6th Cir. 2003) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)). However, in *United States v. Brown*, 49 F.3d 1162, 1169 (6th Cir. 1995), we held that "even evidence not described in a search warrant may be seized if it is reasonably related to the offense which formed the basis for the search warrant." (quoting *United States v. Fortenberry*, 860 F.2d 628, 636 (5th Cir. 1988) (quoting *United States v. Munroe*, 421 F.2d 644, 646 (5th Cir. 1970)) (internal quotations omitted)).

Here, Agent Crowe's seizure of Defendant's videotapes was valid because the tapes were reasonably related to the offense that formed the basis of his search warrant. The search warrant granted to Agent Crowe authorized him to seize "intoxicating liquors and all records, papers, ledgers, pictures, or devices used in the storage, sale, transportation, distribution or manufacture of [said liquors] . . . contrary to the Laws of the Sate of Tennessee." In executing the warrant, Agent Crowe searched Defendant Savoy's business and noticed several videotapes in his office. When Mr. Crowe asked Defendant what was on the videotapes, he told him that the tapes contained surveillance recordings. As recordings of Defendant selling intoxicating liquors would be reasonably related to the basis of the warrant, Agent Crowe and his fellow officers were within their rights to seize the tapes. The fact that after reviewing the tapes the officers realized that some of the tapes did not contain evidence of the sale of intoxicating liquors, but instead contained images of minors engaged in sexual acts with adults, is of no consequence. The Supreme Court held in *Harris v. United States*,

331 U.S. 145 (1947), that a law enforcement agent in making a valid search may seize property found on the premises being searched which is the subject matter of a different crime, even though the officer was not aware that such property was on the premises when the search was initiated. *See also United States v. Eisner*, 297 F.2d 595, 597 (6th Cir. 1962). Thus, the seizure of Defendant's tapes was valid.[4]

### III. CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's orders.

---

[4]The district court made a finding of fact that Defendant consented to the viewing of the videotapes. Therefore, even if the tapes were not reasonably related to the basis of the warrant, the officers permissibly seized the tapes once they realized the tapes were evidence of a crime.