RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0131p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

———————————

RAYMOND SAVOY,

　　　　　　　　　　*Plaintiff-Appellant,*

　　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　*Defendant-Appellee.*

No. 08-6240

———————————

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 07-01025—James D. Todd, District Judge.

Submitted: April 28, 2010

Decided and Filed: May 12, 2010

Before: BATCHELDER, Chief Judge; MOORE and COOK, Circuit Judges.

———————————

**COUNSEL**

**ON BRIEF:** R. Leigh Grinalds, ASSISTANT UNITED STATES ATTORNEY, Jackson, Tennessee, for Appellee. Raymond Savoy, Fort Worth, Texas, pro se.

———————————

**OPINION**

———————————

　　KAREN NELSON MOORE, Circuit Judge. Raymond Savoy appeals the district court's partial denial of his motion for return of property. This matter arises as a proceeding ancillary to Savoy's criminal prosecution for child-pornography related charges in the United States District Court for the Western District of Tennessee. *United States v. Savoy*, 280 F. App'x 504, 506 (6th Cir.), *cert. denied*, 129 S. Ct. 742 (2008). This court has previously affirmed Savoy's convictions for violating 18 U.S.C. §§ 2251(a) and 2252(a)(4)(B) for using minors to engage in sexually explicit conduct to produce videotapes and for possessing those videotapes, which stemmed from evidence seized at the Rocky Top Tavern, Savoy's place

1

of business.  While executing a search warrant at the Rocky Top Tavern for "'intoxicating liquors and all records, papers, ledgers, pictures, or devices used in the storage, sale, transportation, distribution or manufacture of [said liquors] . . . contrary to the Laws of the State of Tennessee,'" officers discovered videotapes in Savoy's locked office that Savoy indicated were used for his video-surveillance system in the Tavern.  *Id.* at 506 (alteration in original).  The officers seized "[s]ixty VHS tapes . . . , two hundred ninety-one photographs, the components of the surveillance system, and a television."  Doc. 8 (Dist. Ct. Order at 1 n.2).  The government used four of the videotapes depicting minors as evidence in Savoy's criminal prosecution.

After his conviction, Savoy, now a federal prisoner, filed a Federal Rule of Criminal Procedure 41(g) motion for return of property, seeking the return of all of the seized property not admitted into evidence in his trial, with the exception of the surveillance system.  The district court engaged in an in camera review of the photographs and videotapes and granted Savoy's motion with regard to all items except those videos and photographs whose subjects were minors and those videos whose subjects were adults who were not aware that they were being recorded.  The district court found that Savoy was not entitled to lawful possession of those adult videotapes under Tennessee Code Annotated § 39-13-605.  Savoy appeals the district court's judgment with regard to the adult videos only.

## I.  DISCUSSION

### A.  Partial Denial of Savoy's Motion to Return Property

We review for abuse of discretion the denial of a Rule 41 motion for return of property, which involves "essentially a civil equitable proceeding."  *United States v. Duncan*, 918 F.2d 647, 654 (6th Cir. 1990) (internal quotation marks and alteration omitted), *cert. denied*, 500 U.S. 933 (1991); *United States v. Headley*, 111 F. App'x 808, 809 (6th Cir. 2004) (unpublished order).  "What we are concerned with is whether the district court properly balanced the competing equities in deciding whether return was in order."  *Duncan*, 918 F.2d at 654.  "'The general rule is that seized property, other than contraband, should be returned to its rightful owner once the criminal proceedings have terminated.'"  *United States v. Hess*, 982 F.2d 181, 186 (6th Cir. 1992) (quoting *United States v. LaFatch*, 565 F.2d 81, 83 (6th Cir. 1977)).  Under Rule 41, "'[a] district court has both the jurisdiction and

the duty to return the contested property once the government's need for it has ended.'" *United States v. Bowker*, 372 F.3d 365, 387 (6th Cir. 2004) (quoting *Hess*, 982 F.2d at 187), *vacated on other grounds by* 543 U.S. 1182, *reinstated by* 125 F. App'x 701 (2005). "However, the person seeking return of property must show that they are lawfully entitled to possess it." *United States v. Headley*, 50 F. App'x 266, 267 (6th Cir. 2002) (unpublished order); *accord Sovereign News Co. v. United States*, 690 F.2d 569, 577 (6th Cir. 1982), *cert. denied*, 464 U.S. 814 (1983); *United States v. Francis*, 646 F.2d 251, 262 (6th Cir.) (holding that Rule 41 places the burden on the claimant), *cert. denied*, 454 U.S. 1082 (1981).

Rule 41 provides, in relevant part:

(g)     Motion to Return Property.  A person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return.  The motion must be filed in the district where the property was seized.  The court must receive evidence on any factual issue necessary to decide the motion.  If it grants the motion, the court must return the property to the movant, but may impose reasonable conditions to protect access to the property and its use in later proceedings.

FED. R. CRIM. P. 41(g).  We have held "that Rule 41(g) 'clearly contemplates a hearing "on any issue of fact necessary to the decision of the motion."'"  *Bowker*, 372 F.3d at 387 (quoting *Hess*, 982 F.2d at 186).  Here, the district court looked to state law to determine whether Savoy was entitled to lawful possession of the adult videotapes.  Under Tennessee Code Annotated § 39-13-605,

(a)     It is an offense for a person to knowingly photograph, or cause to be photographed an individual, when the individual is in a place where there is a reasonable expectation of privacy, without the prior effective consent of the individual . . . if the photograph:
(1)     Would offend or embarrass an ordinary person if such person appeared in the photograph; and
(2)     Was taken for the purpose of sexual arousal or gratification of the defendant.
(b)     As used in this section, unless the context otherwise requires, "photograph" means . . . any videotape or live television transmission of any individual so that the individual is readily identifiable.
(c)     All photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed.

TENN. CODE ANN. § 39-13-605.  The district court found that "the tapes were made using a hidden camera, and the females were not aware that they were being taped in various stages of nudity and/or performing sex acts."  Doc. 8 (Dist. Ct. Op. at 3).  But the court did not make an explicit finding as to whether the females were "'in a place where there is a reasonable expectation of privacy'" as required under § 39-13-605.  Savoy argues "that the individual's [sic] in the video's [sic] did not have an expectancy of privacy in a public tavern that was equipped with video surveillance."  Appellant Br. at 3.  The government responds that "while it is not reasonable to expect that one's nude body would not be viewable by those present, there is a reasonable expectation of privacy from recording."[1]  Appellee Br. at 7.  Savoy thus argues that the "reasonable expectation of privacy" inquiry requires a single analysis of the circumstances presented by the "place," and the government counters that the inquiry requires a separate analysis of the circumstances of each "individual" recorded in the "place."

We conclude that Savoy's approach is closer to the plain language of the statute and that under the plain language of the statute we must decide what is "a place where there is a reasonable expectation of privacy" under § 39-13-605 and whether the Rocky Top Tavern would meet that standard.[2]

---

[1]The government, noting the dearth of case law related to § 39-13-605, attempts to utilize an analogy to the Wisconsin Court of Appeals's treatment of a "similar" Wisconsin statute, Wisconsin Statute § 942.09.  Appellee Br. at 7–8 (citing *State v. Jahnke*, 762 N.W.2d 696 (Wis. Ct. App. 2008)).  However, the relevant language of the Wisconsin statute—"'while that person is nude *in a circumstance in which he or she has* a reasonable expectation of privacy'"—justified the court of appeals's inquiry into the viewpoint of the individual subject to the recording at issue.  *Jahnke*, 762 N.W.2d at 698 & n.4 (quoting Wis. Stat. § 942.09(2)(am)1) (emphasis added).  This language in Wisconsin differs from the language at issue in Tennessee Code Annotated § 39-13-605 in a materially significant way.  Even so, we note that the Wisconsin Court of Appeals distinguished the reasonable expectation of privacy held by a private person recorded in the defendant's private bedroom from the lack of a reasonable expectation of privacy that an exotic dancer "who dance[s] nude before multiple patrons *in a club open to the public*" would enjoy.  *Id.* at 700 (emphasis added).

[2]The district court also did not make an explicit finding that the videos, if made in violation of § 39-13-605, constituted "contraband," but instead seemed to assume that if it was a crime to make the videos then it was a crime to possess the videos.  *See* Doc. 8 (Dist. Ct. Op. at 2–3).  Although Savoy does not raise this issue on appeal, we conclude that the district court did not abuse its discretion in treating the videotapes as contraband.  BLACK'S LAW DICTIONARY (9th ed. 2009) defines contraband in part as "[g]oods that are unlawful to possess" and "derivative contraband" as "[p]roperty whose possession becomes unlawful when it is used in committing an illegal act."  Under Tennessee Code Annotated § 39-13-605(c), "[a]ll photographs taken in violation of this section shall be confiscated and, after their use as evidence, destroyed."  We read this provision to imply that it is also unlawful to possess such items and that they are contraband.  *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 699–700 (1965) (distinguishing between "per se contraband" and "derivative contraband").

#### 1.     Statutory Language: "when the individual is in a place where there is a reasonable expectation of privacy"

Our research uncovered only four Tennessee cases that even mention § 39-13-605,[3] and only two that state the facts of conviction. In *State v. Castrejon*, No. M2005-01886-CCA-R3-CD, 2006 WL 1097486 (Tenn. Crim. App. Apr. 6, 2006) (unpublished opinion), the court upheld the defendant's consecutive sentence for conviction under § 39-13-605 for videotaping himself touching a minor while she slept. *Id.* at *1. In *State v. Dickens*, No. M2003-00783-CCA-R3-CD, 2004 WL 735025 (Tenn. Crim. App. Apr. 6, 2004), the court upheld, against a sufficiency challenge, the defendant's conviction for criminal attempt to commit unlawful photographing in violation of § 39-13-605 for attempting to take a picture of a naked woman over the top of the wall in a closed, locked tanning-booth stall that was "designed to ensure privacy." *Id.* at *1–2, *4. Neither court engaged in any analysis of whether the offense occurred in "a place where there is a reasonable expectation of privacy." However, the *Dickens* court's sufficiency analysis focused not on the woman's expectation of privacy within the tanning booth but rather on the place itself, stating "that each tanning room is designed to ensure privacy. The doors lock from the inside and, although the walls do not extend all the way to the ceiling, it would be difficult to see over them without standing on something." *Id.* at *4. The court thus focused on whether the place itself—the tanning room—could give rise to a reasonable expectation of privacy and not whether the individual then in the place had a reasonable expectation of privacy. Although the statute seems designed to protect the privacy interests of the individual subject to the photograph, the statute considers that privacy interest with reference to the individual's presence "in a place where there is a reasonable expectation of privacy."[4]

---

[3] Tennessee Code Annotated § 39-13-607 utilizes the same language—"in a place where there is a reasonable expectation of privacy"—to codify the offense of observation without consent. Unfortunately the Tennessee courts have not interpreted the phrase under this statute, either.

[4] The Tennessee Legislature has proposed an amendment that replaces "is in a place where there is" with "has" such that the provision would read "when the individual has a reasonable expectation of privacy." S.B. 3219, 106th Leg., 2d Sess. (Tenn. 2009); H.B. 3277, 106th Leg., 2d Sess. (Tenn. 2009). This amendment, if it passes, would support the government's position that we must analyze the reasonable expectation of privacy held by each individual on the videotapes. However, we are bound to interpret the statute as it was written at the time applicable to Savoy's claim, i.e., in 2005 when the videos were seized and Savoy was prosecuted.

The Tennessee courts have produced a wealth of case law on places where a person may or may not have "a reasonable expectation of privacy." Most recently, the Tennessee Supreme Court upheld the Court of Criminal Appeals's decision "rejecting the Sixth Circuit bright-line rule that a resident always has a reasonable expectation of privacy in a secured common area" in favor of "the totality of the circumstances test . . . for determining the reasonableness of an expectation of privacy." *State v. Talley*, — S.W.3d —, 2010 WL 987072, at *6–7 (Tenn. Mar. 19, 2010). Applying this test, the court held that "the Defendant [resident] did not have a reasonable expectation of privacy in the commonly shared, interior hallway of a condominium complex" because no resident "could unilaterally exclude others rightfully within the hallway," residents had collectively allowed non-residents to have intermittent access to the common areas, and there was "no evidence that the defendant had taken any precautions to maintain his privacy in the common areas of the building." *Id.* at *7–8. The court noted that "[a]s a general rule, unlocked or unsecured common areas of apartment buildings do not qualify for any reasonable expectation of privacy." *Id.* at *6 n.4.

Based on the Tennessee Court of Criminal Appeals's application of § 39-13-605 and the Tennessee Supreme Court's approach to the privacy inquiry, we conclude that a totality-of-the-circumstances test should apply for determining whether a place may give rise to a reasonable expectation of privacy under § 39-13-605, recognizing that "[t]he Fourth Amendment protects people, not places, and provides sanctuary for citizens wherever they have a legitimate expectation of privacy." *Minnesota v. Olson*, 495 U.S. 91, 96 n.5 (1990) (internal quotation marks omitted). "But the extent to which the Fourth Amendment protects people may depend upon where those people are." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). Therefore we must determine whether, under the totality of the circumstances at issue in each videotape, an individual in the Rocky Top Tavern would be justified in asserting that he or she is "in a place where there is a reasonable expectation of privacy."

### 2. The Rocky Top Tavern

Although the district court did not make findings with respect to the contents of the videos aside from their unsuspecting adult female subjects, this court has previously stated the facts related to the videotapes as follows:

> During the search, officers discovered a locked room, which Defendant Savoy opened for them. Mr. Savoy described this room as his office. The room contained a single bed, a desk, a television (TV), a video cassette recorder (VCR), and several videotapes. Defendant advised officers that the TV and VCR were used in relation to his video-surveillance system. According to the officers, Mr. Savoy consented to the officers viewing the videotapes on his TV and VCR. Agents played the tapes to determine whether they contained illegal liquor or beer sales. However, the tapes actually depicted sex acts between Mr. Savoy and unknown females, what appeared to be minor females removing their clothing and dancing, and sexual acts between a male and what appeared to be a minor female. Officers then found a camera and microphone hidden in a hollowed-out two-by-four (2 x 4) stud behind the bar. The camera and microphone were not readily visible to persons inside the bar, and were recovered only after Defendant Savoy advised agents of their respective location. The officers seized all of the videotapes for further review.

*Savoy*, 280 F. App'x at 506 (footnote omitted). Because Savoy was charged with child-pornography related offenses, this court discussed only the contents of the videos admitted into evidence at trial, and those tapes depicted only minors—not the adult females in the videotapes at issue here. However, this court recounted that the videotapes admitted into evidence at trial depicted minor females in various states of nudity and/or engaged in sex acts "behind the bar." *Id.* at 507. None of the four videotapes admitted into evidence contained footage from within the "locked room," and it seems that the camera captured events solely in the area "behind the bar" because the camera was located "behind the bar." *See id.* at 506–07.

Our inquiry is therefore confined to the business premises of the Rocky Top Tavern. "An expectation of privacy in commercial premises . . . is different from, and indeed less than, a similar expectation in an individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987); *see also Carter*, 525 U.S. at 90–91; *Autoworld Specialty Cars,*

*Inc. v. United States*, 815 F.2d 385, 388 (6th Cir. 1987) ("'[Proprietor] did not have any reasonable expectation of privacy in areas of the store where the public was invited to enter and to transact business.'" (quoting *Maryland v. Macon*, 472 U.S. 463, 469 (1985))). Tennessee courts have recognized that even when a person visits "another's [private] home for a short period of time and is essentially at the location to conduct a business transaction, the [person] possesses no expectation of privacy in the home." *Kyles v. State*, No. W2004-00374-CCA-R3-PC, 2005 WL 645161, at *5 (Tenn. Crim. App. Mar. 16, 2005) (unpublished opinion) (citing *Carter*, 525 U.S. at 89–91). And the Tennessee courts abide by the "now-classic principle: 'What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. . . . *But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected.*'" *State v. Medford*, No. W2002-00226-CCA-R3-CD, 2003 WL 22446575, at *8 (Tenn. Crim. App. Oct. 21, 2003) (unpublished opinion) (quoting *Katz v. United States*, 389 U.S. 347, 351 (1967)); *see State v. Ross*, 49 S.W.3d 833, 843 & n.9 (Tenn. 2001). "Public accessibility, in other words, does not invariably defeat a reasonable expectation of privacy." *Medford*, 2003 WL 22446575, at *8; *see State v. Munn*, 56 S.W.3d 486, 494–95 (Tenn. 2001) (holding that defendant who requested to be alone with parent in police-station interview room and to have the recording equipment turned off had reasonable expectation of privacy from being recorded by hidden audio and video recording system after police complied with both requests and closed the door behind them when they left the room); *State v. Roode*, 643 S.W.2d 651 (Tenn. 1982) (holding that helicopter surveillance of area of defendant's property within public view did not violate reasonable expectation of privacy). However, there is no reasonable expectation of privacy "in areas of [a business] where the public was invited to enter and to transact business." *Maryland v. Macon*, 472 U.S. 463, 469 (1985); *see State v. Heller*, No. W2007-01455-CCA-R3-CD, 2008 WL 2901581, at *7–9 (Tenn. Crim. App. July 24, 2008) (unpublished opinion) (holding that defendant had standing to challenge search of his person at a business but not to challenge the search of the business itself because present only as casual visitor without a reasonable expectation of privacy); *State v. Norton*, No. E2001-01903-CCA-

R3-CD, 2002 WL 1585634, at *8 (Tenn. Crim. App. July 18, 2002) (unpublished opinion) (noting that owner had no reasonable expectation of privacy in his tavern because it was open to the public at the time the search warrant was executed, but expressly not ruling on privacy interests of customers present).

The district court failed to make findings of fact to support that the "reasonable expectation of privacy" element of § 39-13-605 was satisfied under the totality of the circumstances here.  Without such findings, we are unable to determine whether the district court abused its discretion in assuming that the element was satisfied because each videotape presents a unique set of circumstances that requires a fact-intensive totality-of-the-circumstances inquiry to determine whether the Rocky Top Tavern qualifies as "a place where there is a reasonable expectation of privacy" under the circumstances of each recording.  The videotapes were entered into the record in the district court, but neither Savoy nor the government has presented any evidence as to whether the adult females in the requested videos were present at the Rocky Top Tavern for anything other than business purposes at the time that the nudity and/or sexual activity occurred and was recorded.  Because findings of fact are the province of the district court, and the district court has already conducted a review of the twenty videotapes at issue, we vacate the district court's judgment with regard to the adult videotapes and remand for further proceedings consistent with this opinion.  The district court must determine whether each videotape in question was recorded while the Rocky Top Tavern was open to the public for business purposes, what specific areas of the bar premises the hidden camera captured in each video (whether the videos contain only footage from "behind the bar" or within public view), and whether any steps were taken in an attempt to maintain the privacy of the activities that occurred in each video.  *See Heller*, 2008 WL 2901581, at *8;[5] *Carter*, 525 U.S. at 88–91 (holding that defendant's

---

[5] In determining whether a business patron had standing to challenge the search of the business itself, the *Heller* court specifically listed "seven factors to be considered when determining if a legitimate expectation of privacy exists," including:

(1) ownership of the property; (2) whether the defendant has a possessory interest in the thing seized; (3) whether the defendant has a possessory interest in the placed [sic] searched; (4) whether the defendant has the right to exclude other[s] from the place; (5) whether he has exhibited a subjective expectation that the place would remain free from intrusion by the state; (6) whether the defendant took normal precautions to

expectation of privacy in premises owned by another depends on the purpose of the visit); *Lowe v. Clift*, 2007 WL 2112672, at *4 (E.D. Tenn. 2007) (unpublished opinion) ("Moreover, patrons of a venue into which the public is invited do not have a reasonable expectation of privacy—they necessarily encounter others who observe their presence and behavior." (citing *Macon*, 472 U.S. at 469)).  Only after the district court makes findings of fact that enable it to determine whether the "reasonable expectation of privacy" element of Tennessee Code Annotated § 39-13-605 was satisfied under the totality of the circumstances for each videotape individually may the court determine whether Savoy is or is not entitled to lawfully possess each videotape for purposes of his Rule 41(g) motion for return of property.

**B. Consideration of Search Warrant for Rule 41 Analysis**

Savoy argues that the district court in reviewing his Rule 41(g) motion should have "consider[ed] the validity of the State Search Warrant, and whether it went outside the scope of 'things to be searched,[] and/or items to be seized[]' before deciding to only return some of the property to Appellant's designee" because the search warrant was "obtained because of the sale of liquor in an establishment licensed for the sale of beer only."  Appellant Br. at 3; *see also id.* at 4.  This argument has no merit because this court has already decided that the videotapes that were used in Savoy's prosecution were properly seized, *Savoy*, 280 F. App'x at 510–11, and the same rationale applies to the adult videotapes at issue here.  An earlier panel of this court held that the "seizure of Defendant's videotapes was valid because the tapes were reasonably related to the offense that formed the basis of his search warrant," in accordance with the Supreme Court's holding in *Harris v. United States*, 331 U.S. 145 (1947), "that a law enforcement agent in making a valid search may seize property found on the premises being searched which is the subject matter of a different crime, even though the officer was not aware that such property was on the premises when the search was initiated."  *Savoy*, 280

---

maintain his privacy; and (7) whether he was legitimately on the premises. *Heller*, 2008 WL 2901581, at *8 (quoting *State v. Oody*, 823 S.W.2d 554, 560 (Tenn. Crim. App. 1991)); *accord Talley*, 2010 WL 987072, at *5.

F. App'x at 511.  The fact that the adult videotapes were not later used in Savoy's prosecution for child pornography charges does not impact our analysis.[6]

## C.  Additional Request Not Filed with District Court

Savoy acknowledges that he did not include in his Motion for Return of Personal Property a specific request for the return of his video surveillance equipment, but he argues that the district court should have addressed its return anyway because "[a] Pro se litigant should not be required to list every little piece of property that was seized." Appellant Br. at 5.  Although "we are mindful to construe [pro se] arguments liberally," *El Bey v. Roop*, 530 F.3d 407, 413 (6th Cir. 2008), a claimant may abandon a claim to seized items by not requesting their return in the request filed for the other items seized, *see McBean v. United States*, 43 F. App'x 853, 855 (6th Cir. 2002) (unpublished order). Aside from the liberal construction afforded pro se filings, Savoy presents no arguments on appeal as to why the district court should have returned his video surveillance equipment.  Savoy's motion was not a general request for all property seized but rather made specific requests for the return of the videotapes, photographs, and negatives.[7] Savoy's failure to request the return of his surveillance equipment in the district court precludes us from considering the propriety of return of that property in the first instance.  *See* Fed. R. Crim. P. 41(g); *El Bey*, 530 F.3d at 412.  Savoy may present this request to the district court on remand.

## II.  CONCLUSION

For the above reasons, we vacate the district court's judgment with regard to the twenty videotapes at issue in this appeal, and we remand for the district court to make findings of fact that will enable it to determine whether, consistent with Federal Rule of

---

[6]The legality of the initial seizure of the adult videotapes would not alter our analysis under Rule 41(g) because the same analysis applies "where the initial seizure was lawful and where it was unlawful." *Francis*, 646 F.2d at 262 n.7.

[7]Although Savoy's motion did not reference the television, the district court ordered the television's return because the government had no objection to its return—this stands in contrast with the government's objection in the district court to the return of the surveillance system. *See* Doc. 7 (Dist. Ct. Order at 1–2).

Criminal Procedure 41(g), Savoy is entitled to lawful possession of the videotapes under Tennessee Code Annotated § 39-13-605.